[No. 4269.   Decided August 7, 1902.]

EFFIE G. SHERMAN, *Respondent,* v. CHARLES SWEENY, *Appellant.*

CONTRACTS — RESCISSION BY SUBSTITUTION OF NEW AGREEMENT.

The legal effect of a subsequent contract covering the same subject matter and made by the same parties as an earlier agreement between them, but containing terms inconsistent therewith, so that the two cannot stand together, is to rescind the earlier contract by making the later one a substitute therefor.

PLEADING — DENIALS.

Where defendant has specifically denied the ultimate fact in issue that he had paid the sum of $8,750 upon an option in accordance with the terms thereof, his failure to deny a further allegation that $50,000 paid by him was paid in accordance with the option would not constitute an admission of payment in accordance with the option contract inasmuch as the statement of the manner of payment was evidentiary matter, which it was unnecessary to deny.

SAME — ISSUES — INTRODUCTION OF EVIDENCE WITHOUT OBJECTION — EFFECT.

Where a plaintiff introduces evidence on the theory that the denials of defendant raise a particular issue, she cannot afterwards raise the objection that no issue was tendered, but she is

bound by the legal effect of the evidence introduced by her upon that issue.

FRAUD — MEANS OF KNOWLEDGE EQUIVALENT TO KNOWLEDGE.

Under the rule which prevents one who has the means of knowledge before him, and who refuses or neglects to avail himself thereof, from asserting that he was deceived or defrauded, a wife who, without reading it, signs a receipt in full for all demands, when told to sign by her husband, who was acting as her agent and had read the receipt, cannot afterwards claim that she was induced to sign through fraud, relying upon the representation of defendant's agent that it was merely an order for the delivery of a deed held in escrow.

Appeal from Superior Court, Spokane County.—Hon. HERMAN D. CROW, Judge pro tem. Reversed.

*Heyburn & Heyburn* and *Post, Avery & Higgins,* for appellant.

*A. E. Gallagher* and *Voorhees & Voorhees,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—This is an action for the recovery of money, brought by respondent against appellant. Respondent in her complaint alleges in substance: That on and prior to the 28th day of October, 1899, she was the owner in her own individual and separate right of an undivided one-sixth interest in and to certain mining claims situate in Robbins mining district, in Idaho county, state of Idaho, said claims being respectively known as "Big Buffalo," "Merrimac," and "Oro Fino;" that, at the time mentioned, J. N. Rice, Perry Mallory, and James Justus owned, together with respondent, an undivided half interest in the whole of said claims, less an undivided interest adjudged to belong to one Harry Glidden, to be deducted from the interest of said Rice; that on said date respondent and said Rice, Mallory, and Justus entered

into a contract in writing with the appellant, whereby appellant was given an option to purchase said undivided half interest, less the interest of said Glidden, upon the following terms, towit: That appellant should pay the aggregate sum of $87,500, $8,750 of which was then paid in cash. A further sum of $8,750 was to be paid on or before May 1, 1900, and the balance of $70,000 was payable on or before November 1, 1900. That as a part of the consideration for said contract, the said persons granting the option signed and acknowledged a mining deed in the usual form, conveying their interest aforesaid to appellant, and placed said deed in escrow with the Exchange National Bank in Spokane, Washington, to be delivered to appellant upon the payment of said sums at or before the times mentioned. That at the time of executing said option contract, and as a part of the consideration for the respondent's signing the same and placing said deed in escrow, the appellant entered into another contract with respondent whereby he promised and agreed that if he made said payment of $8,750 on or before May 1, 1900, he would thereupon pay to respondent the sum of $11,-875. That thereafter, and on or about the 16th day of April, 1900, the respondent and said Rice, Mallory, and Justus agreed with appellant that, if he would at once exercise his right to take up said deed under said option, and would at once pay them the sum of $50,000 cash on account of said option, they would remit to appellant the balance of said purchase price, and would permit him at once to take said deed out of escrow. That appellant thereupon agreed to do so, and on the 16th day of April, 1900, paid them the sum of $50,000, and at once received from them an order directing the aforesaid bank to deliver said deed to him, which delivery was made.

That on April 16, 1900, appellant paid said sum of $8,750 upon said option in accordance with the terms thereof. That thereafter, and prior to the commencement of this action, respondent demanded payment of said $11,875, which was refused. Judgment is demanded for said sum, with interest from April 16, 1900. The answer denies that respondent at the time of making said option contract or at any other time was the owner of any interest in said mining claims; denies that said Rice, Mallory, and Justus, or either of them, owned an undivided half interest with respondent, or any interest, in said claims at any time; admits that appellant entered into a contract in writing, a copy of which is set out in the complaint, and the purport of which is as stated above, but alleges the facts to be that at the time of making said contract the respondent and said Rice, Mallory, and Justus claimed to own an interest in said mining claims, and for such supposed interest appellant paid them the sums of money stated in the complaint, but that neither respondent, nor any of the persons alleged in the complaint to have had an interest in the property, ever had any interest therein; that after the making of said contract the supreme court of the state of Idaho, by its judgment, held and determined that none of said persons ever had any interest in said claims, and, upon said judgment being entered, appellant refused to make further payments under said contracts, for the reason that the consideration thereof had failed since they were made, and the persons assuming and undertaking to sell and convey to appellant the interests mentioned and described therein had no interest which they could sell or convey to him. It is further denied that appellant ever made any second payment as provided in said contract. It is also alleged

that respondent signed and delivered to appellant a receipt in full for all sums of money due, owing, or payable to her on account of or in connection with any business transaction arising out of the aforesaid contracts, and that no sum whatever is due and owing to her on account of said contracts, or upon any account whatever. The answer also contains allegations to the effect that respondent and Rice, Mallory, and Justus made false representations to appellant concerning their title to said mining claims, upon which he relied. The reply denies the material allegations of the answer, and affirmatively alleges that prior to the making of said contracts an action had been instituted in the district court of the second judicial district of the state of Idaho, for Idaho county, wherein said Rice and others were plaintiffs, and one Rigley and others were defendants, and that in said action it had been adjudged by said district court that said Rice and others, the plaintiffs therein, were the owners of an undivided half interest in said mining claims, less a one-sixteenth interest therein, which said Rice had previously sold to one Glidden, and the decree provided that the defendants in the action should convey to Rice and others, the plaintiffs therein, the interest above described, from which decree the defendants in the cause appealed to the supreme court of Idaho; that thereafter, and while said appeal was pending, said option contract was entered into, and that appellant then and prior thereto knew that the interest of respondent, and also that of Rice, Mallory, and Justus, in said mining claims, was based upon the said decree of said district court of Idaho, and that said decree might be reversed on appeal; that neither respondent, nor Rice, Mallory, and Justus, ever agreed to give appellant any other title than that which was based upon said de-

cree. The reply also contains allegations to the effect that respondent was induced by false representations of appellant's agent, upon which she relied, to sign the receipt mentioned in the answer without reading the same. The above is a substantial statement of the issues presented by the pleadings. The cause was tried by the court without a jury, and resulted in a judgment against appellant for the full sum demanded, together with interest, amounting in all to $13,052.50. From said judgment this appeal was taken.

A number of distinct errors are assigned, but our views of this case are such that we do not deem it necessary to discuss them all. It will be observed from the statement of the complaint that the theory of respondent is that the consideration running to appellant for his contract to pay her $11,875 was that she should sign the option contract, and also the deed to be placed in escrow. Respondent in her testimony says it was also based upon the consideration that she was to be instrumental in getting the other parties interested with her to sign the option contract and also the deed. But it is not so alleged in the complaint. The allegations of the complaint are to the effect that the sole consideration for the promise in the second contract was that respondent should sign the option and the deed. Respondent was to share with her co-contractors in the proceeds of the option contract proper, which privilege became to her a consideration for her execution thereof. The second contract was therefore neither more nor less than a promise to pay her a sum in addition to that named in the option contract, for which she gave no consideration other than that given for the option contract itself, viz., the signing of the option and the deed. The two contracts were therefore as one

to the respondent; the latter being a provision within the former, and depending for its operation upon the performance of the condition precedent that appellant should, in accordance with the terms of the option contract, pay the $8,750 to become due thereunder May 1, 1900. Under no circumstances could the latter provision of the contract become binding upon appellant without the performance of the condition. precedent. Was that condition ever performed? The court below found that it was. The evidence establishes beyond dispute that in the month of April, 1900, some time prior to the maturity of the $8,750 payment which was to become due on May 1st, following, it was agreed that, if appellant would pay the lump sum of $50,000 cash to respondent and her co-contractors, they would remit the balance of the sum theretofore agreed upon, and would cause the deed theretofore held in escrow to be delivered to appellant. In pursuance of that agreement, appellant paid to respondent $21,-000. and to Rice $14,000,—the respective sums which were demanded as their portions of the $50,000. Respondent and Rice also held options from Mallory and Justus to purchase their interests in the original option. Those were assigned to appellant, and he then settled with Mallory and Justus, and, upon direction from all to the bank, the deed was delivered to appellant. The court found that the $8,750 was paid according to the option, and that $41,250 was paid and received in full of the balance of $70,000 under the option. We do not find in the evidence authority for the segregation of the $8,750 from the whole amount, and for the specific application of that sum to the payment of the option installment due May 1, 1900. The evidence does not show that such a segregation and application was ever mentioned be-

tween the parties during their negotiations leading up to the payment of the $50,000. We are unable to see that any portion of the payment was made under the terms of the former contract. That contract called for the payment of $78,750 more before appellant was entitled to possession of the deed. The sum paid was $28,750 less than the former contract called for, and yet it was agreed that upon payment of that sum the deed should be delivered. Stripped of technical consideration, we think a new agreement was then made which entirely superseded the former one. Under the former agreement the payments were to be made to the escrow holder in the sums and in the manner therein specified. Under the new arrangement the payments were not only made in sums different from that provided in the original agreement, but were to be made and were made severally to the individuals, and not to the escrow holder. If $8,750 was paid *according to the terms of the option,* then from that moment the option was given continuous life until November 1, 1900, and there remained owing thereon the sum of $70,000. To have reduced that amount would have required a new agreement, or at least a modification of the old one, which would have been in effect a new one. But such a reduction and modification was in fact agreed upon before $8,750 or any other sum was paid. The option contract, as it originally stood, was therefore superseded before any money was paid, and it was manifestly impossible to pay $8,750 in accordance with the terms of the option, for the reason that its terms no longer existed. The new agreement was first concluded with respondent and Rice, and afterwards with Mallory and Justus. It therefore became a new arrangement from its inception. The legal effect of a subse-

quent contract covering the same subject matter and made by the same parties as an earlier agreement, but containing terms inconsistent therewith, so that the two cannot stand together, is to rescind the earlier contract. It becomes a substitute therefor, and is the only agreement between the parties upon the subject. *Housekeeper Pub. Co. v. Swift,* 38 C. C. A. 187 (97 Fed. 290); *Chrisman v. Hodges,* 75 Mo. 413; *McDonough v. Kane,* 75 Ind. 181; *Harrison v. Polar Star Lodge,* 116 Ill. 279 (5 N. E. 543). We think the condition precedent, viz., the payment of $8,750 in accordance with the terms of the option contract, was never performed, and that no recovery can be had under the provisions of the contract sued upon. The promise to pay respondent the sum named never became absolute, and is therefore not enforcible.

Respondent contends that the pleadings are such that the allegation in the complaint that the payment was made in accordance with the terms of the option is admitted by the answer. The answer specifically denies that after the making of said contract, or any contract set out in the complaint, appellant ever made any second payment as provided therein. The complaint alleged that appellant "did on April 16, 1900, pay said sum of eighty-seven hundred and fifty ($8,750) dollars upon said option in accordance with the terms of said option." The answer certainly denies that allegation. Respondent now contends that said allegation in the complaint was only a legal conclusion, was therefore immaterial, and that the denial thereof raised no issue. It is contended that the further allegation that the $50,000 was paid on account of and in accordance with the option is the necessary averment of the fact that the $8,750 was paid under the option, that the words quoted from the complaint are but

the legal conclusion to follow therefrom, and that the answer does not deny the payment of the $50,000 in accordance with the option. We think the words quoted constituted a statement of the ultimate fact sought to be pleaded, and that the denial thereof raised the material issue in the cause. The ultimate fact sought to be pleaded was the payment of the $8,750 according to the option. The statement of the manner of payment was evidentiary matter which it was not necessary to deny. *Nudd v. Thompson,* 34 Cal. 39; *Fry v. Bennett,* 5 Sandf. 54; *Adams Express Co. v. Darnell,* 31 Ind. 20 (99 Am. Dec. 582).

".  .  . those important and substantial facts alone should be alleged which either immediately form the basis of the primary right and duty, or which directly make up the wrongful acts or omissions of the defendant, and not the details of probative matter or particulars of evidence by which these material elements are to be established. This doctrine applies to all classes of actions, and if strictly enforced it would render the pleadings simple, and the legal issues at least clear, certain, and single." Pomeroy, Remedies & Remedial Rights (3d ed.), § 526.

The answer was construed by the trial court as raising the issue when the question was suggested upon the trial. No exception was taken to this ruling of the court, and respondent proceeded without remonstrance to the examination of her witnesses upon the theory that it was necessary for her to show the performance of the condition precedent. We think the denial in itself sufficient, but in any event, if the point had been urged, doubtless the court would upon application have permitted an amendment making the denial more comprehensive, since it is manifest from the pleading that it was the *bona fide* intention of the pleader to deny those allegations so mate-

rial to the case. Under such circumstances, we think the respondent should not now be heard to urge this point, especially in view of the fact that she herself introduced evidence as to the alleged manner of performance of the condition precedent. Under the rule stated in *Easter v. Hall,* 12 Wash. 160 (40 Pac. 728), appellant is entitled to the benefit of what that evidence shows. The court there, at page 162, said:

"If the plaintiff herself showed a state of facts upon which she should not recover, the defendants were entitled to the benefit of it although they had not pleaded the same as a defense."

To the point that evidence once introduced without objection becomes the property of the case, and that the legal effect which follows from it shall be applied to the case, see *Slingluff v. Builders' Supply Co.,* 89 Md. 557 (43 Atl. 759); *Flora v. Carbean,* 38 N. Y. 111; *In re Yates,* 99 N. Y. 94 (1 N. E. 248).

It will be observed from the statement of the pleadings that appellant avers in his answer that respondent signed and delivered to him a receipt in full for all sums of money due, owing, or payable on account of any business transaction arising out of the two contracts set out in the complaint. The receipt signed by respondent was in the following words:

"Spokane, Washington, April 14, 1900.
To the Exchange National Bank, Spokane, Wash.

DEAR SIRS: Whereas we have received full consideration and payment from Charles Sweeny for the conveyance of the 'Big Buffalo,' 'Merrimac' and 'Oro Fino' lode claims, situate in Robbins Mining District, Idaho county, State of Idaho, such conveyance being in escrow in your bank, you are hereby authorized and directed to deliver the said conveyance in escrow to Charles Sweeny, his heirs and assigns."

It will be noticed that the receipt, upon its face, was directed to the bank which had held the deed in escrow under the former arrangement; but it was delivered by respondent directly to appellant, and therefore served the double purpose of an order to the bank and a receipt to appellant. In her reply, respondent alleges fraud by which she was induced to sign the receipt, and that by reason thereof she did not know its full import. She says in her testimony that appellant's agent, who was present when she signed the paper, told her it was simply an order on the bank for the deed, and that she, relying thereon, signed it without reading it. · She also testified that her husband had conducted all the negotiations in reference to these mining sale contracts for her. He was present when the receipt was signed by her. It was first handed to him. He read it and passed it to his wife, and told her to sign it, which she did. Her husband and agent, who managed the whole matter for her, knew its contents, and was chargeable with knowledge thereof. Whether she read it or not, she at least had the opportunity to do so, as it lay before her when she signed it. She says she did not intend by the receipt to release her claim under the $11,875 contract. Certainly the breadth of statement in the receipt would include all contracts under which she claimed consideration. Neither she nor her husband said anything at that time about any further demand. Under those circumstances, the deal was closed, the money paid, and the deed delivered. Some time afterwards respondent's husband left the matter with counsel, with instructions to collect if possible. Respondent cannot now say that she was fraudulently misled into signing the paper, under the rule already announced by this court, which prevents one who has the means of

knowledge before him, and who refuses or neglects to avail himself thereof, from asserting that he was deceived or defrauded. *Walsh v. Bushell,* 26 Wash. 576. (67 Pac. 216); *Griffith v. Strand,* 19 Wash. 686 (54 Pac. 613); *Washington Central Imp. Co. v. Newlands,* 11 Wash. 212 (39 Pac. 366).

It is true, this paper, for the purpose of this consideration, was a receipt, and as such was subject to explanation by oral testimony. But the paper itself and the circumstances attending the signing and delivery of it were evidentiary, as bearing upon the real agreement theretofore made, and in pursuance of which the paper was signed and delivered. The paper was drawn by appellant, and shows clearly what was his understanding of the new deal. It was signed by respondent under the direction and advice of her husband and agent, and, she being fully chargeable with knowledge of its contents and its legal effect, it became at once evidence of the real agreement between the parties. If respondent understood the matter otherwise than as stated in the paper, she should have so announced before signing it. If she expected to make any demand inconsistent with the terms there stated, it was her duty to make it known before signing and delivering it, and accepting the money which was paid relying thereon. Had she made known such intention, appellant might then have declined to pay any portion of the $50,000, which it is highly probable he would have done, and thus have saved the whole sum to himself, which subsequent developments show he would have saved for all time. Under all these circumstances, it seems to us unconscionable that respondent should now be heard to say that she did not intend to do what the paper signed by her says she did.

The question of failure of consideration is discussed in the briefs, but we do not find it necessary to occupy space to discuss that subject, or to pass upon it. It is a fact in the case that appellant paid, all told, $58,750 for something that never existed. It was, however, paid at a time when all parties believed that there was a tangible title in existence, which he was acquiring. If respondent should prevail here, appellant would be required to pay over $13,000 more for the same intangible, non-existent thing. However, if it had appeared that the payment of May 1, 1900, had been made according to the terms of the option contract, that being the condition precedent necessary to give any vital force to the contract sued upon, it would then have been necessary for us to determine whether that contract rested upon any consideration, in view of the fact that respondent's title to the thing about which they were contracting had wholly failed. But since it is unnecessary to pass upon that subject, we leave it without further comment.

The judgment is reversed and the cause remanded, with instructions to the lower court to enter judgment that respondent shall take nothing, and dismissing the action.

REAVIS, C. J., and FULLERTON, MOUNT, ANDERS, WHITE and DUNBAR, JJ., concur.